**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| ADAM FRANCHI, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. _____ ) |
| v. | ) JURY TRIAL DEMANDED ) |
| SPRING BANK PHARMACEUTICALS, INC., DAVID ARKOWITZ, TODD BRADY, TIMOTHY CLACKSON, MARTIN DRISCOLL, KURT M. EICHLER, PAMELA KLEIN, SCOTT SMITH, and F-STAR THERAPEUTICS LIMITED, | ) CLASS ACTION ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. On June 29, 2020, Spring Bank Pharmaceuticals, Inc.'s ("Spring Bank" or the "Company") Board of Directors (the "Board" or "Individual Defendants") caused Spring Bank to enter into a share exchange agreement (the "Agreement") with F-star Therapeutics Limited ("F-star").

2. Pursuant to the terms of the Agreement, among other things, Spring Bank will acquire: (i) the issued capital of F-star; and (ii) each ordinary share of F-star in exchange for shares of Spring Bank common stock (the "Proposed Transaction"). Upon the closing of the Proposed Transaction, holders of F-star are expected to own approximately 61.2% of the outstanding capital stock of Spring Bank.

3. On August 28, 2020, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC"), which recommends that Spring Bank's stockholders vote to approve, among other things, the issuance of stock in connection with the Proposed Transaction.

4. As set forth below, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Spring Bank common stock.

9. Defendant Spring Bank is a Delaware corporation and maintains its principal executive offices at 35 Parkwood Drive, Suite 210, Hopkinton, Massachusetts 01748. Spring Bank's common stock is traded on the NASDAQ Capital Market under the ticker symbol "SBPH."

10. Defendant David Arkowitz is a director of the Company.

11. Defendant Todd Brady is a director of the Company.

12. Defendant Timothy Clackson is a director of the Company.

13. Defendant Martin Driscoll ("Driscoll") is President, Chief Executive Officer ("CEO"), and a director of the Company.

14. Defendant Kurt M. Eichler is a director of the Company.

15. Defendant Pamela Klein is a director of the Company.

16. Defendant Scott Smith is Chairman of the Board of the Company.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

18. Defendant F-star is a company registered in England and Wales and a party to the Agreement.

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Spring Bank (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20. This action is properly maintainable as a class action.

21. The Class is so numerous that joinder of all members is impracticable. As of July 28, 2020, there were approximately 17,248,545 shares of Spring Bank common stock issued and

outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

23. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

***Background of the Company and the Proposed Transaction***

26. Spring Bank is a clinical-stage biopharmaceutical company engaged in the discovery and development of a novel class of therapeutics using its proprietary small molecule nucleotide platform.

4

27. Spring Bank designs its compounds to selectively target and modulate the activity of specific proteins implicated in various disease states.

28. The Company is developing its STING product portfolio with its lead clinical product candidate, SB 11285, an intravenously-administered immunotherapeutic agent for the treatment of selected cancers, its STING antagonist compounds for the treatment of a broad range of inflammatory diseases, and its STING agonist ADC program for potential oncology applications.

29. On July 29, 2020, the Board caused Spring Bank to enter into the Agreement with F-star.

30. Pursuant to the terms of the Agreement, among other things, Spring Bank will acquire: (i) the issued capital of F-star; and (ii) each ordinary share of F-star in exchange for shares of Spring Bank common stock.

31. According to the press release announcing the Proposed Transaction:

Spring Bank Pharmaceuticals, Inc. (Nasdaq: SBPH) ("Spring Bank"), a clinical-stage biopharmaceutical company developing novel therapeutics for oncology and inflammatory diseases, and F-star Therapeutics, Limited ("F-star"), a privately-held clinical-stage biopharmaceutical company focused on transforming the lives of patients with cancer through the development of innovative tetravalent bispecific (mAb$^{2}$™) antibodies, today announced that the companies have entered into a definitive share exchange agreement pursuant to which Spring Bank will, subject to stockholder approval, acquire all of the outstanding share capital of F-star in exchange for newly issued shares of Spring Bank in an all-stock transaction. The combined company, operating under the name F-star Therapeutics, Inc., will advance its immuno-oncology pipeline of multiple tetravalent bispecific antibody programs, as well as Spring Bank's STING (STimulator of INterferon Gene) agonist, SB 11285, currently in a Phase 1/2 clinical trial. . . .

About the Proposed Combination

Pursuant to the share exchange agreement, Spring Bank will acquire all of the outstanding share capital of F-star in exchange for the issuance of newly issued shares of Spring Bank common stock upon closing, subject to the satisfaction or waiver of customary closing conditions, including the receipt of the required

approval of the Spring Bank stockholders. On a pro forma basis and assuming that the proceeds of the concurrent F-star financing will be $25 million, current Spring Bank equity holders and F-star equity holders will own approximately 38.8% and 61.2%, respectively, of the combined company calculated on a fully diluted basis using the treasury stock method and, in the case of Spring Bank, excluding out-of-the-money options and warrants. The actual ownership allocation will be subject to adjustment based on Spring Bank's net cash balance at the closing of the transaction, the actual amount raised in the F-star financing and certain other terms set forth in the share exchange agreement. Prior to closing, Spring Bank will seek stockholder approval to effect a reverse stock split of its outstanding common stock so that the combined company satisfies the continued listing requirements of the Nasdaq Capital Market.

In addition to retaining equity ownership of the combined company, Spring Bank stockholders of record as of the close of the combination will have the opportunity to obtain potential future value in the form of two CVRs associated with Spring Bank's ongoing Spring Bank SB 11285 IV clinical program and Spring Bank's STING antagonist research platform. Subject to the terms of the first CVR agreement for the STING agonist clinical program, if one or more strategic transactions are consummated for SB 11285 by the combined company during a period that is the longer of one and a half years following the closing of the combination or one year after the final database lock of the current SB 11285 IV Phase 1a/1b trial, those equity holders of Spring Bank will receive the greater of 25% of the net proceeds from such transactions or $1.00 per share (on a pre-reverse split basis), provided that the aggregate net proceeds are at least approximately $18.0 million. Subject to the terms of the second CVR agreement, if a potential development agreement is consummated and one or more strategic transactions are consummated for the STING antagonist research platform by the combined company during the seven (7)-year period following the closing of the combination, those equity holders of Spring Bank will receive 80% of the net proceeds from such transactions. If Spring Bank enters into a development agreement for the STING antagonist research platform in advance of the closing of the proposed combination, Spring Bank may include certain proceeds from such transaction in its net cash calculation.

The Spring Bank directors and officers have signed support agreements committing them to vote in favor of the transaction. These same parties, as well F-star's key equity holders, directors and officers, have signed lock-up agreements restricting transfers of the combined company's stock (except as to any shares purchased by such holders in the financing closing immediately prior to the business combination) for 180 days post-closing.

The transaction has been approved by the boards of directors of both companies and the equity holders of F-star, who have signed the share exchange agreement. The combined company will be headquartered out of F-star's existing facilities in Cambridge, U.K. and Cambridge, MA. Following closing, which is expected to

occur in late 2020, Spring Bank will be re-named F-star Therapeutics, Inc. and is expected to trade on the Nasdaq Capital Market under the ticker symbol "FSTX".

Ladenburg Thalmann & Co. Inc. is acting as exclusive financial advisor and Lowenstein Sandler is serving as legal counsel to Spring Bank. Mintz Levin and Mills & Reeve are serving as legal counsel to F-star.

***The Registration Statement Omits Material Information, Rendering It False and Misleading***

32. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

33. As set forth below, the Registration Statement omits material information.

34. First, the Registration Statement omits the Company's and F-star's financial projections.

35. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

36. Second, the Registration Statement fails to disclose whether any of the "confidentiality agreements entered into by Spring Bank prior to the Special Committee's engagement of Ladenburg" contained standstill and/or "don't ask, don't waive" provisions.

37. Third, the Registration Statement omits material information regarding the process leading up to the execution of the Agreement.

38. The Registration Statement fails to disclose the terms and values of the indications of interest submitted "by early May 2020."

39. The Registration Statement fails to disclose the terms and value of the "proposal received by Spring Bank from a third party relating to the development of Spring Bank's STING antagonist program" on July 9, 2020 (the "Third Party Proposal").

40. The Registration Statement fails to disclose whether Spring Bank received any subsequent communications from the third party regarding the Third Party Proposal.

41. The Registration Statement fails to disclose the nature of Individual Defendant Driscoll's and F-star CEO Eliot Forster's discussion regarding the Third Party Proposal that took place on July 10, 2020.

42. The Company's stockholders are entitled to an accurate description of the process leading up to the Proposed Transaction.

43. Fourth, the Registration Statement fails to disclose whether the Company's financial advisor, Ladenburg Thalmann & Co. Inc., performed any financial analyses of the Company. If so, the Registration Statement must provide a fair summary of those analyses.

44. The omission of the above-referenced material information renders the Registration Statement false and misleading.

45. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Spring Bank's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Spring Bank**

46. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

47. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Spring Bank is liable as the issuer of these statements.

48. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within Spring Bank, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

49. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

50. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

51. The Registration Statement is an essential link in causing plaintiff and Spring Bank's stockholders to approve the Proposed Transaction.

52. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

53. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and F-star

54. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

55. The Individual Defendants and F-star acted as controlling persons of Spring Bank within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or Board members of Spring Bank and participation in and/or awareness of the

Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Spring Bank, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

56. Each of the Individual Defendants and F-star was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Spring Bank, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

58. F-star also had supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

59. By virtue of the foregoing, the Individual Defendants and F-star violated Section 20(a) of the 1934 Act.

60. As set forth above, the Individual Defendants and F-star had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a

direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.  Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.  In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.  Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.  Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

| | |
|---|---|
| Dated: September 8, 2020 | **RIGRODSKY & LONG, P.A.** |
| | By: */s/ Gina M. Serra* |
| | Brian D. Long (#4347) |
| **OF COUNSEL:** | Gina M. Serra (#5387) |
| | 300 Delaware Avenue, Suite 210 |
| **RM LAW, P.C.** | Wilmington, DE 19801 |
| Richard A. Maniskas | Telephone: (302) 295-5310 |
| 1055 Westlakes Drive, Suite 300 | Facsimile: (302) 654-7530 |
| Berwyn, PA 19312 | Email: bdl@rl-legal.com |
| Telephone: (484) 324-6800 | Email: gms@rl-legal.com |
| Facsimile: (484) 631-1305 | |
| Email: rm@maniskas.com | *Attorneys for Plaintiff* |